KING v. BENDER.

(Circuit Court of Appeals, Ninth Circuit.  May 12, 1902.)

No. 770.

1. JUDICIAL SALE—RIGHT OF REDEMPTION—SUBSEQUENT LIEN.

Code Civ. Proc. Mont. § 702, provides that, where the answer of a defendant admits a part of the claim sued on to be just, the action may be severed on plaintiff's motion, and judgment rendered on the part so admitted. Section 1234 gives the right to redeem from an execution sale to a creditor having a lien by judgment, mortgage, or attachment on property sold subsequent to that on which it is sold. A plaintiff sued on two distinct causes of action, and procured an attachment on both, which was levied on real estate. One cause of action was admitted, and the action was thereupon severed, and judgment rendered on such cause, under which the attached property was sold to a third person. The action on the remaining cause was continued. *Held*, that the attachment as to such part still remained a lien on the property, subject to the sale made under the judgment, and constituted a "subsequent lien" entitling plaintiff to redeem from such sale.

2. SAME—ATTACHMENT—PLEADINGS—EVIDENCE.

Plaintiff, claiming a lien by attachment on premises sold under execution, paid to the sheriff the sum required to redeem, and, on the sheriff thereafter issuing a deed to the purchaser, brought an action to have the purchaser declared a trustee for plaintiff. The purchaser, by his answer, made no issue as to the levy of the attachment, but denied that the lien was in force at the time of the alleged redemption. *Held*, that evidence of defects in the levy of the attachment was inadmissible.

3. SAME—REDEMPTION—VALIDITY—DEFECTS IN SUBSTANCE.

In proceedings by an attachment lienor to redeem premises from an execution sale the validity of the redemption is not affected by defects, unless they are defects in substance.

4. SAME—PURCHASE AT TAX SALE.

Code Civ. Proc. Mont. § 1235, requires that a redemptioner in redeeming property sold under execution shall pay the purchaser the amount of any

assessment or taxes which he may have paid thereon after his purchase, with interest on such amount. A purchaser at execution sale afterwards purchased the property at a tax sale. *Held,* that such purchase at the tax sale was not a payment of the tax and discharge of the lien, but continued the tax lien, and a redemptioner from the execution sale was not required to pay to the purchaser, or for him to the sheriff, the amount paid at such tax sale.

5. SAME—CREDITOR HAVING A LIEN.

Under Code Civ. Proc. Mont. § 1235, providing that if a purchaser of land at an execution sale is also a creditor having a prior lien to that of the redemptioner, other than the judgment under which the purchase was made, the redemptioner must pay the amount of such lien, with interest, in order to redeem, where such purchaser thereafter purchases the premises at a tax sale, he does not thereby become a creditor of the judgment debtor, and the amount of the lien so acquired need not be paid in redeeming from the execution sale.

6. SAME—PLEADING—ESTOPPEL.

Plaintiff brought an action on two claims, and attached the debtor's real property. One of the claims was admitted, and judgment was entered therefor, and the property sold to a third party, the defendant herein, under execution, the action being continued as to the other claim. Within a year from such sale, plaintiff, claiming the right to redeem under his attachment, paid to the sheriff the sum necessary to redeem from defendant's purchase, and within 60 days thereafter another creditor, who had attached the property, redeemed from plaintiff, and subsequently assigned all his rights to the premises to plaintiff. Before such assignment defendant commenced a proceeding for mandamus to compel the sheriff to execute a deed to defendant as such purchaser, which application was granted, and the deed issued. Thereafter plaintiff brought this action to have defendant adjudged to hold the title in trust for plaintiff. Defendant, having filed his answer, asked leave to amend by setting up such mandamus proceedings, and alleging that plaintiff appeared therein as one of the real parties in interest, and openly took part in and controlled the proceeding, and resisted such application, and that the steps taken by the sheriff in the premises were for the benefit of said creditor, who redeemed from and subsequently assigned to plaintiff, and were carried on with his permission and by his authority. *Held,* that such proposed amendment did not show that plaintiff's assignor was a party to or took part in such mandamus proceedings, or that plaintiff was in any way estopped by such proceeding; hence it was not error to refuse such amendment.

Ross, Circuit Judge, dissents.

Appeal from the Circuit Court of the United States for the District of Montana.

On December 3, 1896, John O'Rourke commenced an action in the district court for the Second district of the state of Montana against the Grand Opera House Company, a corporation, as defendant, and joined in his complaint two causes of action,—one upon a promissory note of the corporation for $762; the other for $585, claimed by O'Rourke to have been paid out by him for the corporation. On the same day, upon a writ of attachment issued in said cause for both causes of action, the property in controversy in the present suit was attached. The corporation appeared, and answered the complaint, not controverting the first cause of action, but denying the facts alleged as to the second. On September 16, 1897, judgment was rendered for O'Rourke upon the first cause of action, and the case remained pending as to the other. Upon the judgment so made and entered an execution issued, and upon December 27, 1897, the property in controversy was sold by the sheriff to Silas F. King, the appellant, who purchased the same for the sum of $1,072.42. On December 3, 1896,—the same day on which O'Rourke's action was begun,—J. O. Bender, the appellee herein, began an action against the corporation upon three causes of action, aggregating

$700, and on the same day attachment was issued upon his complaint, and thereupon the property in question was attached subject to the attachment of O'Rourke. The appellee obtained judgment on his action on May 21, 1898. On December 3, 1896, John F. Forbis also began an action against the corporation to recover $500. On the same day he also caused a writ of attachment to issue, and the property to be attached. His attachment was subsequent to those of O'Rourke and the appellee. On May 21, 1898, Forbis obtained a judgment against the corporation in his action. On December 27, 1898,—12 months after the sale to King,—O'Rourke, claiming to have a right of redemption upon his attachment still subsisting for his controverted cause of action which remained pending after judgment had been entered upon his first cause of action, tendered to the appellant the amount of the purchase money, which the latter had paid, together with the statutory interest thereon, for the purpose of redeeming the property. On the same day the appellee served upon the sheriff of the proper county his notice of redemption, and under his said notice paid to the sheriff for O'Rourke the amount of money which O'Rourke had tendered to the appellant, together with the amount which O'Rourke claimed to have been secured by his attachment. The appellee then, as agent and attorney for O'Rourke, receipted to the sheriff for the money which he had tendered for O'Rourke, and as the agent of O'Rourke received the same. These redemptions or attempted redemptions were made within one year from the date of the sale under execution; that being the time allowed by the Montana law for redemption from execution sales. On January 10, 1899, and within the 60 days allowed by law to redeem from a redemptioner, Forbis, upon his judgment, redeemed from the redemption made by O'Rourke and the appellee. On January 19, 1899, notwithstanding these redemptions, the sheriff executed to the appellant, as purchaser under the O'Rourke judgment, a deed to the premises in controversy. On February 25, 1899, Forbis conveyed back to the appellee all right which he acquired by his redemption. Thereafter the appellee instituted in the circuit court of the United States for the district of Montana the present suit against the appellant, praying that the latter be declared a trustee for him as to all rights acquired under the sheriff's deed. The answer of the appellant, King, denied that O'Rourke, at the time when he attempted to redeem said property, was a creditor of the corporation having a lien against the property subsequent to that upon which the same was sold, or that under said attachment lien he redeemed the property from sale, and denied that the attachment lien of the appellee was subsequent to the judgment and attachment of O'Rourke, and denied that the appellee under his judgment redeemed said property from the sale to the appellant, or from the redemption attempted to be made by O'Rourke, and denied that the attachment of Forbis is subsequent to the lien on which the property was sold on execution, and denied that Forbis redeemed from said sale or from said attempted redemption; and the appellant, in his answer, further set up the levy of certain taxes upon said property, for which said unpaid taxes sale was made, at which the appellant, to protect his interests, bought in the property at such sale, and received therefor tax certificates, having paid at such sales on February 8, 1897, $650.68, at a sale for taxes due for 1896 for state, county, school, and road purposes; on January 29, 1898, $518.72, for taxes due for 1897 for state, county, etc., purposes; and on February 21, 1898, $429.76 for city taxes due for the year 1897; and averred that at the time when the said O'Rourke and said appellee and said Forbis attempted to redeem said property they wholly failed to tender or deposit with the sheriff, for the appellant, the sums so paid by him for taxes, and that for that reason the appellant refused to accept the amount which was paid for him to the sheriff.

J. K. McDonald, Campbell, Metson & Campbell, and L. S. B. Sawyer, for appellant.

Forbis & Evans, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended that O'Rourke's redemption was invalid, for the reason that upon taking judgment as to one of his causes of action his attachment lien was merged in the judgment, and no attachment lien survived as to the other and undetermined cause of action; and that if, indeed, his attachment lien survived, it was not a lien "subsequent" to that upon which the property was sold, and was not, therefore, a lien such as entitled him to redeem under the provisions of the statute, which gives the right of redemption to "a creditor having a lien by judgment mortgage or attachment on the property sold, or on some share or part thereof subsequent to that on which the property is sold." Code Civ. Proc. § 1234. The judgment which O'Rourke took upon the uncontroverted cause of action was a severance of his causes of action, which was permitted by the statutes of Montana (section 702, Code Civ. Proc.), which provides as follows:

"Where the answer of the defendant expressly or by not denying, admits a part of the plaintiff's claim to be just, the court upon the plaintiff's motion may, in its discretion, order that the action be severed; that a judgment be entered for the plaintiff for the part so admitted, and if the plaintiff so elects that the action be continued with a like effect as to the subsequent proceedings as if it had been originally brought for the remainder of the claim."

We see no reason why, upon a severance thus had, the attachment lien, which was made to cover both causes of action, did not thereafter subsist as to the remaining and undetermined cause. We think it a reasonable construction of the statute which permits the severance to say that with the severance of the cause there is also a severance of the incidents which attach thereto, including a severance of the attachment lien. The severance and the proceedings thereafter had to enforce the judgment by the sale of the property had the effect in law to postpone the attachment lien of the second cause of action and the judgment lien of the first. The attachment lien, being thus postponed in the order of priority, was and remained a lien subsequent to the judgment lien.

It is contended that the evidence shows that there were fatal defects in the levy of the O'Rourke attachment. The appellant's answer makes no issue under which such evidence is pertinent. On the contrary, it admits the attachment, but "denies that the lien of said attachment under the remaining cause of action is still in force, or is subsequent to said judgment lien, or was in force at the time of the alleged redemption." Counsel for the appellant point also to defects in the steps taken by O'Rourke to redeem. We find none of them defects in substance, such as to affect the validity of the redemption. The right to redeem from an execution sale is statutory, it is true, but the law favors the right of redemption, since it tends to accomplish the just distribution of the debtor's property in the payment of his debts. Schuck v. Gerlach, 101 Ill. 338; Pownall v. Hall, 45 Cal. 193; Kofoed v. Gordon (Cal.) 54 Pac. 1115.

It is contended that no redemption could be made from the sheriff's sale to the appellant without paying or tendering for his benefit the

sums which he had paid in buying the property at the tax sales. The statute (section 1235, Code Civ. Proc. Mont.) provides as follows:

"The judgment debtor or redemptioner may redeem the property from the purchaser at any time within one year after the sale, on paying the purchaser the amount of his purchase with one per cent. per month thereon in addition up to the time of redemption, together with the amount of any assessment or taxes which the purchaser may have paid thereon after purchase, and interest on said amount, and if the purchaser be also a creditor having a prior lien to that of the redemptioner, other than the judgment under which said purchase was made, the amount of such lien with interest."

We do not think that one who has purchased property at a tax sale, and has received a tax certificate, can claim to have paid an assessment or tax thereon, within the terms of this statute, so as to entitle him to, demand the repayment of the same, with interest, on redemption from his purchase at sheriff's sale. One who buys property at a tax sale stands in a different attitude from one who pays taxes thereon. Williams v. Townsend, 31 N. Y. 411. The appellant in this case had the option either to pay the taxes or to purchase the property at the tax sales. Instead of paying the delinquent taxes, and thus discharging the lien thereof, he elected to buy in the property at the tax sales, and thereby to continue the lien. It may be true that the appellee, if he had chosen to regard the purchases at the tax sales as payments of taxes, and on redeeming from the sheriff's sale to the appellant had added to the redemption money the sums so paid out, would in equity have been permitted to do so; for it seems to be well established that one incumbrancer cannot, in equity, buy a tax title to the exclusion of another incumbrancer, and one lawfully in possession of land sold upon execution may not acquire a tax title at a tax sale made during his possession, and set it up against the right of redemptioners. His relation to the title is such that, although he is not bound to pay the taxes, he may do so to protect his interest; but he cannot acquire that protection by depriving incumbrancers of their liens. His purchase inures to the protection, and not to the deprivation, of the regular title, since the lien of the taxes is a lien upon the interest of the purchaser as well as a lien upon others interested therein. Garrettson v. Scofield, 44 Iowa, 35; Fair v. Brown, 40 Iowa, 209; Manning v. Bonard (Iowa) 54 N. W. 459; Horton v. Ingersoll, 13 Mich. 409; Insurance Co. v. Bulte, 45 Mich. 113, 7 N. W. 707. But the right to treat such a purchase as a payment of the taxes is a right which belongs only to a redemptioner, and it rests upon a principle of equity which is necessary for his protection. Kelsey v. Abbott, 13 Cal. 619; Maxfield v. Willey, 46 Mich. 252, 9 N. W. 271. Said Judge Cooley in that case, "Either may bid as a stranger to the title if the other makes no objection." The appellant, in buying the property at the tax sales, elected to occupy the relation of purchaser, with all the rights incident to that relation. He cannot now complain if the appellee, in redeeming, exercised his option, and accepted the situation as he found it, and as the appellant had made it, and regarded the purchases at the tax sales not as payments, but as the initiation of an adverse title, and,

instead of including the taxes in the redemption money which he tendered to the sheriff, he redeemed, as the record shows he did, from the tax sales in the manner prescribed by law for such redemption. At the time when he redeemed from the sheriff's sale he could have had no assurance that the tax certificates still remained in the appellant. For aught he knew, they might have been transferred to another. By pursuing the course marked out by the statute, he followed strictly the law of redemption, and deprived the appellant of no substantial right.

Nor can it be said that the tax certificates created in favor of the appellant a lien upon the property prior to that of the redemptioner, and which the latter was required to pay or tender, under the last clause of the statutory provision above quoted. That clause refers to a purchaser who is also a "creditor having a prior lien," and it contemplates that the purchaser must be a creditor of the judgment debtor. The appellant, while he may be said to have procured a lien upon the property through the tax certificates, which had the effect to assign to him the lien which the state had held for the unpaid taxes, was still, as to said purchases at tax sales, in no sense of the word a creditor of the delinquent taxpayer. The corporation owed him no debt on that account. He could not have compelled it to repay him the money he paid. On the contrary, the debt which the corporation owed for taxes was paid by the sale of its property.

It is contended that the court erred in refusing to permit the appellant to file a supplemental answer. The appellant, after having filed his answer, asked leave to file a supplemental answer, which he presented, and in which he set forth in substance that in January, 1899, in the district court of the state of Montana for Silver Bow county, a proceeding was begun by the appellant, in the name of the state, against the sheriff of that county, for a writ of mandamus to compel the sheriff to execute to the appellant a deed to the premises in controversy; that on January 17, 1899, the sheriff answered, admitting the sale to the appellant, but alleging that O'Rourke and the appellant had made redemptions from said sale, and that the sheriff had refused to make a deed to the appellant on that account; that upon the hearing upon the application for mandamus the appellee appeared as one of the real parties in interest, and in the protection of his own interest openly took part in and controlled the proceedings, and resisted the appellant's application for a writ of mandate in the protection of his own interest, all of which the appellant knew; that upon a determination of the proceedings upon its merits the court awarded the mandamus as prayed for; that one of the real parties to the proceedings was John F. Forbis, who, at the time of the hearing had made a pretended redemption from the appellee, and from whom the latter claims under an assignment of all the rights of said Forbis; that the refusal of the sheriff to issue a deed to the appellant was made before the pretended redemption, but all the subsequent steps taken by the sheriff in the premises "were for the benefit of said Forbis as much as for the appellee and said O'Rourke, and were carried on with his permission and by his authority, after notice to him by said sheriff, all of which has always been known

to complainant"; that an appeal from the order of said court was taken to the supreme court of the state of Montana by the sheriff, which appeal was dismissed by that court for want of prosecution on January 22, 1900. The judgment was not sought to be pleaded as a bar to the present suit, but as an estoppel upon the issue raised by the appellee's redemption. Conceding the law to be that a judgment is res judicata as to one who, although he was not a party to the record, for the protection of his interest has openly taken part in the case, and conducted the trial thereof, to the knowledge of the opposite party, the supplemental answer so tendered, and which attempts to show that the appellee is estopped by the judgment in the mandamus proceedings, is insufficient for that purpose. At the time when the trial was had and the decision was rendered in the mandamus proceedings the property had been redeemed from the appellee's redemption by John F. Forbis, and the rights which the latter acquired had not yet been assigned to the appellee. The most that is said in the supplemental answer of the relation of Forbis to the case is that the steps taken by the sheriff were for his benefit, and were carried on with his permission and by his authority, to the knowledge of the opposite party. These facts so averred must be construed in connection with the averment elsewhere made in the supplemental answer that the appellee, and not Forbis, "controlled the proceedings"; and they fall short of showing any active participation by Forbis in the defense. It is not alleged that he in any way identified himself with the defense, or employed counsel, or contributed to the expense thereof, or was even present in court. All that is alleged is that what was done by the sheriff in defending the action, which was controlled by the appellee, was that it was done with the permission of Forbis. The allegation that it was done under his authority does not add to or enlarge the averment that it was done with his permission. Such an allegation was insufficient to bring the case within the rule as it has been defined by all the decided cases. The supplemental answer, therefore, pleaded no estoppel as to Forbis. He was not bound by the judgment, not having had his day in court. The appellee, when he obtained his assignment from Forbis, was not estopped to avail himself of any of the defenses which the latter could have made to the present suit.

We find no error in any of the rulings of the circuit court. The decree will be affirmed.

ROSS, Circuit Judge (dissenting). I am unable to agree that after the sale under and by virtue of the judgment in which O'Rourke's attachment lien was merged any part of that lien continued to exist upon the property in question to serve as a "subsequently" acquired lien upon which he could base a right to redeem the property; and, as a matter of course, if he was without such right, the attempted redemptions from and through him were unavailing. There was but one writ of attachment sued out, but one levy made, and the inchoate lien thus secured was, in my judgment, entirely merged in the judgment entered in favor of O'Rourke. No authority for splitting up such a lien has been shown, and if, as I

think, none exists, the entire lien was necessarily merged in .the judgment, and was exhausted by the sale of the property to satisfy it, just as the foreclosure and sale of mortgaged premises for a part of the mortgage debt exhausts the lien of the mortgage. See Curtis v. Cutler, 22 C. C. A. 16, 76 Fed. 16, 37 L. R. A. 737. I think the cases are analogous.